**SAVE OUR DUNES, et al., Plaintiffs,**

v.

**Leigh PEGUES, etc., et al., Defendants.**

**Civ. A. No. 84–T–518–N.**

United States District Court,
M.D. Alabama, N.D.

Dec. 17, 1985.

L. Gilbert Kendrick, Montgomery, Ala., Frederick S. Middleton, III, Charlottesville, Va., for plaintiffs.

David Ludder, Ala. Dept. of Environment Management, Legal Div., Montgomery, Ala., for Ala. Dept. of Environmental Management and Broadwater.

Euel Screws, Richard Gill, John Henig, Copeland, Franco, Screws & Gill, Montgomery, Ala., for Collegiate Enterprises.

John C. Bell, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., for U.S. defendants.

Rodney Slusher, Peck, Slusher & Bunch, Florence, Ala., for defendant Developers South, Inc.

David P. Broome, McDonough & Broome, Mobile, Ala., for defendant Ala. Dept. of Environmental Management.

David R. Boyd, Balch, Bingham, Baker, Ward, Smith, Bowman & Thagard, Montgomery, Ala., for defendants Ala. Environmental Management Comm., White, DeBray, Elliot, Riley, McDonald, Farnell & Graves.

Wells D. Burgess, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for Federal defendants.

William J. Baxley, Joel Dillard, Baxley, Beck, Dillard & Dauphin, Birmingham, Ala., for Collegiate.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The plaintiffs are organizations dedicated to the protection of Alabama's natural environment. They have brought this lawsuit challenging the construction of multi-family condominiums on the beaches of Perdido Key on the Alabama Gulf Coast. They claim that officials of the federal government and the State of Alabama have allowed this construction in violation of various federal environmental laws and the due process clause of the fourteenth amendment to the U.S. Constitution. They have sued various federal and state officials and a private developer.

This cause is now before the court on cross-motions for summary judgment filed by all parties. For reasons that follow, the court concludes, pursuant to Fed.R.Civ.P. 56, that there is no dispute as to any issue of material fact and that as a matter of law some of the plaintiffs' claims have merit and some do not.

## I. BACKGROUND

In 1972, the United States Congress passed the Coastal Zone Management Act (CZMA), 16 U.S.C.A. §§ 1451–1464, "to encourage the prudent management and conservation of natural resources in the coastal zone." *Secretary of the Interior v. California*, 464 U.S. 312, 313, 104 S.Ct. 656, 658, 78 L.Ed.2d 496 (1984). Congress found that the "increasing and competing demands upon the lands and water of our coastal zone occasioned by population growth and economic development ... have resulted in the loss of living marine resources, wildlife, nutrient-rich areas, permanent and adverse changes to ecological systems, decreasing open space for public use, and shoreline erosion." 16 U.S.C.A. § 1451(c).

CZMA employs a system of matching grants and other incentives to encourage and assist the coastal states to develop, implement and administer coastal zone management programs, to encourage broad public participation in the development of these programs, and to promote cooperation between federal and state agencies engaged in programs affecting the environment. 16 U.S.C.A. § 1452. The Act authorizes federal grants to coastal states to develop coastal zone management programs consistent with the Act's requirements. § 1454. It also authorizes additional grants to help these states implement and administer the programs once approved. *E.g.*, §§ 1455, 1455a, 1456a, 1456b, 1461. States receiving the grants are required in most instances to match them with 20% in-kind services or cash. The Act provides for continuous and extensive federal review of a state's performance in implementing and administering a program. *E.g.*, § 1458. It requires termination or reduction of financial support if the federal government determines that the state is unjustifiably failing to comply with the Act. §§ 1455(g), 1458(d).

The system established by CZMA for encouraging and assisting coastal states to develop, implement, and administer coastal zone management programs is also subject to the National Environmental Policy Act (NEPA), 42 U.S.C.A. §§ 4321–4361. NEPA requires that before an agency may engage in any major federal action significantly affecting the quality of the human environment it must consider the environmental impact of its action by preparing what is commonly called an environmental impact statement. § 4332(2)(c). Also, any change

in a program, after an original environmental impact statement has been prepared, requires a supplemental environmental impact statement if the change can "in qualitative or quantitative terms" be classified as major federal action significantly affecting the quality of the human environment. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir. July 13, 1981) (Unit A).

Alabama responded to CZMA by applying for and receiving several federal grants to develop a coastal zone management program. Federal officials approved Alabama's program in 1979. Since then, federal officials have regularly awarded additional grants to the state to implement and administer the program, and have conducted extensive periodic reviews to assure that the state is adhering to the program and any additional requirements in the grants. Federal officials also complied with NEPA by conducting an environmental impact statement before they approved the state's program.

Alabama's coastal zone management program, as approved in 1979, established a setback line for construction of buildings along the state's coastal beaches. The line was a certain number of feet back from the natural dune system on the beaches. In 1982, in response to substantial destruction caused after a hurricane hit the Alabama coast, Alabama amended its program to establish a new construction setback line on Perdido Key, a stretch of beach on the Alabama Gulf Coast. The point of reference for the new setback line was an artificial rather than natural dune system. Using this new line, Alabama began issuing permits to private developers for construction on Perdido Key. Although CZMA required that the 1982 program amendment be submitted to federal officials for approv-

al prior to implementation, Alabama never submitted the amendment and federal officials never insisted that the amendment be submitted for approval. Also, federal officials did not determine whether NEPA required a supplemental environmental impact statement on the 1982 amendment. Federal officials allowed Alabama to implement the unapproved amendment with the understanding that Alabama was in the process of establishing a new, comprehensive construction setback line that would apply to all state beaches, not just those on Perdido Key, and that the new line would be submitted for federal approval under CZMA and NEPA in the near future.

In early 1984, the plaintiffs filed this lawsuit charging state and federal officials with violating CZMA, NEPA, and the due process clause of the fourteenth amendment to the U.S. Constitution. They alleged, among other things, that Alabama officials had illegally implemented the 1982 amendment and were illegally issuing permits for construction on Perdido Key. They sued officials of the Office of Ocean and Coastal Resource Management, the principal federal agency responsible for administering CZMA;[1] officials of the Alabama Department of Environmental Management, the state agency responsible for developing, implementing, and administering the state coastal zone management program;[2] the individual members of the Alabama Environmental Management Commission, which oversees the operation of the Alabama Department of Environmental Management; and Collegiate Enterprises, Inc., a private developer which seeks to construct multi-family condominiums on Perdido Key.[3]

The plaintiffs filed several requests, based on CZMA and NEPA, for a prelimi-

---

**1.** With certain reservations, the authority for administering CZMA has been delegated and redelegated from the Secretary of Commerce to the Director of the Office of Ocean and Coastal Resource Management.

**2.** Alabama's coastal zone management plan was actually developed by the Alabama Coastal Area Board, the predecessor to the Alabama Depart-

ment of Environmental Management. For purposes of this opinion, the two agencies are considered as one.

**3.** The plaintiffs sued two private developers initially, Collegiate Enterprises, Inc. and Developers South, Inc. They have abandoned suit against Developers South, Inc.

nary injunction to stop construction and prohibit further issuance of permits. This court denied each request because, while the facts were for the most part as claimed by plaintiffs, the court found that plaintiffs were not likely to succeed on the issues of law presented. The plaintiffs appealed the denial of the last request to the Eleventh Circuit Court of Appeals. This district court, at plaintiffs' request, then issued an injunction to maintain the status quo pending appeal. The Eleventh Circuit refused to stay the injunction.[4]

Finally, in the fall of 1985, while this matter was under submission on the present cross-motions for summary judgment, Alabama complied with its earlier promise to federal officials. The state amended its program to adopt a comprehensive construction setback line for all its coastal beaches, not just those on Perdido Key. The 1985 amendment has been submitted to federal officials for approval. Federal officials are now deciding whether NEPA requires a supplemental environmental impact statement for the amendment and whether they should approve the amendment under CZMA. However, it appears that, absent a prohibitory injunction from this court, state officials will implement the 1985 amendment and the private developer will begin construction on Perdido Key before federal officials have completed their review.

## II. JURISDICTION OVER THE PLAINTIFFS' CZMA AND NEPA CLAIMS

Plaintiff environmental organizations are challenging the 1982 amendment under both CZMA and NEPA and the 1985 amendment under NEPA. The first issue for the court is whether it has jurisdiction to entertain their challenge.

### A.

■ The court will first consider whether it has jurisdiction over the plaintiffs' challenge to the 1982 amendment under CZMA and NEPA. A court may review a final action by a federal agency pursuant to the Administrative Procedure Act, 5 U.S. C.A. § 701–706. The Supreme Court has stated that the finality element of an agency action must be interpreted in a "pragmatic way." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967). *See also Pennzoil Co. v. Federal Energy Regulatory Comm'n*, 645 F.2d 394, 399 (5th Cir.1981). More particularly, "the relevant considerations in determining finality are whether the process of administrative decisonmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." *Port of Boston M.T. Ass'n v. Reder-*

---

**4.** To secure a preliminary injunction a movant must establish that there is a substantial likelihood of success on the merits, that there would be irreparable harm to the movant if relief is not granted, that the threatened injury to the movant outweighs the threatened injury to the non-movant, and that the public interest would not be disserved by granting the relief. *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354–55 (11th Cir.1983). However, to secure an injunction pending appeal where the district court has already ruled that a plaintiff's claim for preliminary injunctive relief lacks merit, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981) (Unit A), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

This court found that plaintiffs met the standard for injunctive relief pending appeal but not the standard for a preliminary injunction. *But see* Note 11, *infra*.

In granting the injunction pending appeal, the court stated that, "assuming that the [plaintiffs'] claims are legally cognizable and the requested relief available, the plaintiffs have presented a voluminous, substantial, and factually favorable case on the merits." February 5, 1985, order. The court then added that if it has incorrectly resolved the significant and difficult issues presented and private developers are allowed to begin construction pursuant to the state's 1982 amendment, the result will be the "irreparable destruction of the dune system on a part of Alabama's beaches." *Id.* The court concluded that irreparable harm to the dunes outweighed the economic hardship to any private developer caused by delay of construction.

*iaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). If an agency action is final, the court then must determine whether the action is arbitrary, capricious, or an abuse of discretion. 5 U.S.C.A. § 706.

■ Here, the federal officials' decision not to review the 1982 amendment under CZMA and not to conduct a supplemental environmental impact statement on the amendment under NEPA constituted final agency action. The federal officials specifically determined that Alabama should have submitted the 1982 amendment for review and approval. However, instead of requiring that the state submit the amendment for approval and instead of conducting an environmental impact statement on the amendment, the federal officials decided to permit the state to use the Perdido Key construction setback line contained in the 1982 amendment while the state considered and promulgated another construction setback line for Alabama's entire coastal area.

The federal officials' decision satisfies the test for finality. First, the court's review will not interfere with the agency's administrative process. The federal officials have already made their decision not to compel submission of the 1982 amendment for federal review and approval and not to conduct a supplemental environmental impact statement on the amendment; and the court's review of this decision will not interfere with the promulgation and approval of a new construction setback line. Second, legal consequences certainly flowed from the decision of the federal officials. The federal officials cleared the way for the Alabama program to continue to receive federal funds even though the 1982 amendment has not been federally approved and a supplemental environmental impact statement not prepared.[5] This

court therefore has jurisdiction over the plaintiffs' challenge to the 1982 amendment.

**B.**

The court will next consider whether it has jurisdiction over the plaintiffs' challenge to the 1985 amendment under NEPA.

■ Admittedly, the federal officials have not reached a final decision as to whether NEPA requires a supplemental environmental impact statement on the 1985 amendment. However, under appropriate circumstances, the All Writs Act, 28 U.S.C.A. § 1651(a), confers on district courts "the traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in progress and prevent impairment of the effective exercise of appellate jurisdiction." *F.T.C. v. Dean Foods Company,* 384 U.S. 597, 604, 86 S.Ct. 1738, 1743, 16 L.Ed.2d 802 (1966). As the former Fifth Circuit stated in *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1359 n. 19 (5th Cir.1978),

> A federal court has the power under the All Writs Act to issue injunctive orders [to preserve the status quo] in a case even before the court's jurisdiction has been established.... [A] federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it.

And as the Eleventh Circuit Court of Appeals stated more recently in *V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1027 (11th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984),

> It is firmly established that the act encompasses the traditional power of the courts to enter a stay of enforcement of an agency decision already entered, pend-

---

**5.** The recent decision of the Supreme Court in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), is not applicable. There, the Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under [5 U.S.C.A.] § 701(a)(2)," 470 U.S. at ——, 105 S.Ct. at 1656.

This "presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* Here, CZMA and NEPA provide such guidelines. *See, e.g.,* 16 U.S.C.A. §§ 1455(g), 1458(d), 42 U.S.C.A. § 4332(2)(c).

ing review in the court issuing the injunction, "to prevent irreparable injury ... resulting from the premature enforcement" of an agency decision. *Scripps-Howard Radio, Inc. v. Federal Commission*, 316 U.S. 4, 9, 62 S.Ct. 875, 879, 86 L.Ed. 1229 (1942). In *Roche v. Evaporated Milk Association*, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), the Supreme Court held further that this "authority is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected." While this power must not be used to circumvent agency decision-making, there is "a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *Arrow Transportation Co. v. Southern Railway Co.*, 372 U.S. [658,] 671 n. 22, 83 S.Ct. [984,] 991 n. 22, 10 L.Ed.2d 52 [ (1963) ].

■ Of course, the authority of the district court to invoke powers conferred by the All Writs Act presumes the presence of potential jurisdiction. *ITT Community Development Corp.*, 569 F.2d at 1358, 1359 n. 19. Here, that potential source is the Administrative Procedure Act. This court therefore has jurisdiction over the plaintiffs' challenge to the 1985 amendment. However, whether the plaintiffs are entitled to injunctive relief under the All Writs Act is an issue the court reaches below.

## III. PLAINTIFFS' CZMA CLAIM

The court will now consider the plaintiffs' CZMA challenge to the 1982 amendment.

Congress was deeply concerned that CZMA be limited to "encouraging" states to manage and conserve their coastal natural resources prudently. *See Secretary of Interior v. California*, 464 U.S. 312, 313, 104 S.Ct. 656, 658 (1984). The U.S. Senate Report on CZMA reflects that Congress was concerned about the "many problems arising from the failure of the State and local governments to deal adequately with the pressures which call for economic development with the coastal zone at the expense of other values." S.Rep. No. 753, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News. 4776, 4780. Congress sought to remedy these problems by "expanding state participation in the control of land and water use decisions in the coastal zone." *Id.* CZMA was not intended to provide a system by which federal officials would directly regulate and control a state's coastal zone. With the exception of land subject to exclusive federal control, the Act does not vest the federal government with ultimate power to control environmental activities along the coast. Rather, the Act is more procedural in nature, requiring that states make "conscious and informal choices among the various alternatives" through the development of coastal zone management programs. *Id.* at 4781. CZMA's "intent ... is to enhance state authority," not "diminish" it through federal regulation and control. *Id.* at 4776.

Consistent with this intent of federal encouragement rather than control, the only relevant sanction for noncompliance with the formal requirements of CZMA is termination or reduction of program funding. 16 U.S.C.A. §§ 1455(g), 1458(d). Congress expressly "considered and rejected several different proposals for penalties and sanctions for noncompliance," S.Rep. at 4789, and concluded that "[u]ntil experience dictates the need for greater sanctions than termination of financial assistance, ... this sanction will suffice," *id.*

The plaintiffs contend that federal officials acted arbitrarily and capriciously and abused their discretion by allowing state officials to implement the 1982 program amendment without federal officials having first approved the amendment under CZMA. The plaintiffs seek reduction or termination of funding under section 1458(d) and section 1455(g). The plaintiffs' contention lacks merit.

Section 1458(d) provides that federal officials shall withdraw approval of and financial assistance to any state program that federal officials determine "is failing to adhere to, is not justified in deviating from (1) the [approved] management program . . ., or (2) the terms of any grant or cooperative agreement . . ., and refuses to remedy the deviation." This section therefore requires withdrawal of financial assistance only if the state's deviation is unjustified and the state refuses to remedy the deviation.

■ Here, federal officials determined that, even though Alabama had never submitted the 1982 amendment for federal approval as required by CZMA, the state could continue to implement the amendment and receive financial assistance under CZMA. This determination was based on the understanding that Alabama was in the process of establishing a new, comprehensive construction setback line for all state beaches, not just for those on Perdido Key, and that the new line would be submitted for federal approval under CZMA and NEPA in the near future. Alabama had, in effect, given federal officials assurance that the state was taking immediate steps to remedy its failure to comply with CZMA and that the state program would soon be in compliance with the statute. Indeed, Alabama is now on its way to doing just this with the submission of the 1985 amendment for federal approval. Under these circumstances, this court cannot say that the federal officials' decision to allow Alabama to implement the 1982 amendment without first securing federal approval of the amendment was arbitrary, capricious, or an abuse of discretion under the guidelines contained in section 1458(g). Termination or reduction of funding under this section is therefore not warranted.

■ The plaintiffs also seek reduction or termination of funding under section 1455(g). This section does not give federal officials as much discretion as section 1458(d). Section 1455(g) provides that if a state amends or modifies its approved program, no further section 1455 grants may

be made to the state to implement its approved program until appropriate federal officials have approved the amendment or modification. Here, federal officials concede that Alabama amended its program in 1982 and that the amendment has not been federally approved. However, federal officials have continued to award section 1455 grants to the state. It is thus apparent that federal officials violated section 1455(g). Conceivably, this court could require that Alabama refund all section 1455 grants received since it amended the program in 1982. However, the court, exercising its equitable powers, declines the plaintiffs' invitation. It appears that with the 1985 amendment Alabama is now on the way toward bringing the program into compliance with CZMA. To require a refund of grants already released and committed would at best be vindictive and might actually harm the environment by crippling the state program.

■ The plaintiffs also seek relief under CZMA against the state officials and private developer sued in this case. First, the plaintiffs maintain that state officials and the private developer are necessary parties for the court to grant full and adequate relief on their CZMA claim. However, since the plaintiffs are not entitled to any relief against the federal officials on their CZMA claim, it follows that they are not entitled to any relief against the state officials and the private developer.

Second, the plaintiffs maintain that they have an independent, private cause of action under 42 U.S.C.A. § 1983 against the state officials for violating CZMA. They correctly note that if they have stated a cognizable claim under section 1983, this court would then have jurisdiction under 28 U.S.C.A. §§ 1331, 1343 to entertain the claim.

■ In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that section 1983 provides a private cause of action against state officials for violations of federal statutes. In determining whether a federal

statute is privately enforceable under section 1983, a court must first determine whether the federal statute confers "substantive rights" upon the plaintiffs. *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 & n. 21, 101 S.Ct. 1531, 1545 & n. 21, 67 L.Ed.2d 694 (1981); *see also* 451 U.S. at 33, 101 S.Ct. at 1548 (White, J., dissenting in part). If so, then there is a presumption that the federal statute may be enforced under section 1983. 451 U.S. at 28, 101 S.Ct. at 1545; *see also* 451 U.S. at 51–52, 101 S.Ct. at 1557 (White, J., dissenting in part). This presumption may be rebutted if, among other things, the "governing statute provides an exclusive remedy for violations of its terms." 451 U.S. at 28, 100 S.Ct. at 1545, *quoting Maine v. Thiboutot*, 448 U.S. at 22 n. 11, 100 S.Ct. at 2513 n. 11 (Powell, J., dissenting). *See also Middlesex County Sewerage Authority v. Sea Clammers Association*, 453 U.S. 1, 19–21, 101 S.Ct. 2615, 2625–27, 69 L.Ed.2d 435 (1981).

■ Whether CZMA confers substantive rights on the plaintiffs is an issue this court need not reach.[6] For, assuming that the statute does, the plaintiffs could not obtain the relief they seek against the state officials, that is, that the state officials be enjoined from issuing state permits. As stated, CZMA expressly limits the sanctions available for violating the statute to reduction or termination of federal funding for the state program. It follows that any section 1983 action brought under these two statutes would be similarly restrained by CZMA. Any other result would contravene the federal-state relationship intended by Congress when it enacted CZMA. This court has already found that reduction or termination of federal funding is not appropriate here.[7]

## IV. PLAINTIFFS' NEPA CLAIMS

The next issue for the court is the plaintiffs' NEPA challenge to the 1982 and 1985 amendments.

### A.

■ NEPA's "mandate to ... agencies is essentially procedural." *Vermont Yankee Nuclear Power Corporation v. Natural Resource Defense Council*, 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978). Its twin aims are, first, that "it 'places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action,'" *Baltimore Gas & Electric v. Natural Resource Defense Council*, 462 U.S. 87, 97, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983), *quoting Vermont Yankee*, 435 U.S. at 553, 98 S.Ct. at 1216, and, second, that "it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Baltimore Gas*, 462 U.S. at 97, 103 S.Ct. at 2252. NEPA does not "elevate environmental concerns over other appropriate considerations," *id.* at 97, 103 S.Ct. at 2253; rather, the Act requires only that the agency take a "hard look" at the environmental consequences before taking major federal action significantly affecting the quality of the human environment, *id.* To achieve this goal, the Act requires that an agency prepare an initial or supplemental environmental impact statement before it reaches a final decision to act or commits resources. NEPA applies to major federal action only, not state or local action.

---

**6.** In an earlier order, this court did reach the issue of whether CZMA confers substantive rights on the plaintiffs. This was unnecessary.

**7.** The court does not understand the plaintiffs to challenge the 1985 amendment under CZMA. However, if they were they could not prevail on the present record. Since the federal officials have not reached a final decision on the 1985 amendment, the plaintiffs' only vehicle for relief would be an injunction under the All Writs Act. The court is convinced that the plaintiffs could not meet the requirements for such relief. *See* Part IV–C of this memorandum opinion. There is not a "substantial likelihood" that the plaintiffs would prevail on their challenge to the 1985 amendment for the same reasons that they cannot prevail on their challenge to the 1982 amendment. Also, the plaintiffs could not show "irreparable harm" since the state could always be required to refund any money improperly received.

When a court has found that a party is in violation of NEPA, the remedy should be shaped to fit each particular case so as to fulfill the various legitimate interests involved. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 1005–06 (5th Cir.1981) (Unit A). Thus, to remedy any NEPA violation here, a court must consider and weigh the various interests at stake and, where possible, attempt to reach a result compatible with these interests. Here, there is NEPA on one hand and CZMA on the other.

■ An injunction to preserve the status quo pending preparation of an environmental impact statement is "often appropriate" where there has been a violation of NEPA. *Environmental Defense Fund*, 651 F.2d at 1005. This injunction serves two beneficial purposes. First, it furthers the aims of NEPA that the relevant discisionmakers and the public have the opportunity to choose among alternatives before resources are committed and a decision is made. *Id.* Second, it provides "the agency with an incentive to comply with NEPA in as rapid and thorough a manner as is reasonably possible." *Id.* at 1005–06.

The requirement that an impact statement be prepared *before* resources have been committed and a decision made is critical. As the First Circuit has explained, "it is far easier to influence an initial choice than to change a mind already made up." *Commonwealth of Massachusetts v. Watt*, 716 F.2d 946, 952 (1st Cir.1983) (citations omitted). The appellate court rested its conclusion on the following observations about NEPA:

> NEPA is not designed to prevent all possible harm to the environment; it forsees that decisionmakers may choose to inflict such harm, for perfectly good reasons. Rather, NEPA is designed to influence the decisionmaking process; its aim is to make government officials notice environmental considerations and take them into account. Thus, when a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm

that NEPA intends to prevent has been suffered.... NEPA in this sense differs from substantive environmental statutes, such as the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. The Federal Water Pollution Control Act focuses upon the "integrity of the Nation's Waters, not the permit process," *Weinberger v. Romero-Barcelo*, 456 U.S. [305,] 314, 102 S.Ct. [1798,] 1804 [, 72 L.Ed.2d 91] [ (1982) ]. NEPA does the converse. Moreover, to set aside the agency's action at a later date will not necessarily undo the harm. The agency as well as private parties may well have become committed to the previously chosen course of action, and new information—a new EIS—may bring about a new decision, but it is that much less likely to bring about a different one.

*Id.* The D.C. Circuit has similarly explained that "[s]o long as the status quo is maintained, so long as the environmental impact statement is not merely a justification for a *fait accompli*, there is a possibility that the statement will lead the agency to change its plans...." *Jones v. District of Columbia Redevelopment Land Agency*, 499 F.2d 502, 512 (D.C.Cir.1974). *See also Forelaws on Board v. Johnson*, 743 F.2d 677, 685 (9th Cir.1985); *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C.Cir. 1983). It should be remembered, however, that NEPA's direct field of operation is limited to major federal action; it does not extend to state or local action.

CZMA, on the other hand, has specifically limited the relationship between the federal government and Alabama's coastal program to federal encouragement of prudent state regulation. To ensure that this relationship remains one of federal encouragement rather than control, the only sanction authorized by CZMA for failure to comply with its requirements is reduction or termination of federal funding. The relationship is not one "in which non-federal action cannot lawfully begin or continue without the prior approval of a federal agency"—that is, a federal agency has no " 'go-ahead' power" over a non-federal enti-

ty. *Biderman v. Morton*, 497 F.2d 1141, 1147 (2nd Cir.1974). Instead, under CZMA, Alabama may always continue with its coastal zone management program, albeit without federal funding, if the program fails to meet federal requirements.

### B.

With these considerations in mind, the court now turns to the plaintiffs' NEPA challenge to the 1982 amendment.

 Their challenge to the 1982 amendment requires only a brief response. The 1982 amendment has been fully superceded by the 1985 amendment. The federal and state officials as well as the private developer all agree that the permits at issue in this lawsuit are now subject to the 1985 amendment. Assuming that the state's implementation of the 1982 amendment should first have been preceded by a supplemental environmental impact statement, it is apparent that to require that federal officials prepare such a statement now would be useless. The plaintiffs are therefore not entitled to any relief against any defendant on their NEPA challenge to the 1982 amendment.

### C.

 The plaintiffs' NEPA challenge to the 1985 amendment raises more questions. The plaintiffs claim that federal officials should prepare a supplemental environmental impact statement on the 1985 amendment. However, federal officials are now deciding whether NEPA requires a supplemental environmental impact statement on the 1985 amendment. This court is therefore without jurisdiction under the Administrative Procedure Act to entertain this claim because federal officials have not yet rendered a final decision.

The plaintiffs are, however, entitled to some relief from the state officials on their NEPA challenge to the 1985 amendment. The plaintiffs request that the court enjoin state officials from issuing permits authorizing construction on Perdido Key. They base their request on essentially three theories. Only one of their theories has merit.

 Their first theory is that the Alabama program has been so "federalized" through substantial federal funding and extensive federal control that any major action taken by state officials significantly affecting the quality of the human environment, such as amending the construction setback line for the state's beaches, is in fact federal action and, thus, must meet the NEPA requirement that a supplemental environmental impact statement first be prepared. *See, e.g., Morris County Trust for Historic Preservation v. Pierce*, 714 F.2d 271 (3rd Cir.1983); *Jones v. Lynn*, 477 F.2d 885 (1st Cir.1973); *Named Individual Members of San Antonio Conservation Society v. Texas Highway Department*, 446 F.2d 1013 (5th Cir.), *cert. denied*, 406 U.S. 933, 91 S.Ct. 2257, 29 L.Ed.2d 711 (1971). However, as already explained, Congress enacted CZMA with the specific intent of avoiding any so-called "federalization" of a state's program. For this court to conclude that Alabama's coastal program has been federalized would contradict the letter and spirit of CZMA. *See Atlanta Coalition on the Transportation Crisis, Inc. v. Atlanta Regional Commission*, 599 F.2d 1333, 1347 (5th Cir.1979) (the "significance" as well as the amount of federal aid is important in determining whether a program is sufficiently federal to render it subject to NEPA). The plaintiffs' first theory lacks merit.

 The plaintiffs' second theory is that they have an independent, private cause of action under 42 U.S.C.A. § 1983 against the state officials for violating NEPA. The court has already discussed, in regard to CZMA, under what circumstances section 1983 provides a private cause of action against state officials for violations of federal statutes. As with CZMA, the court need not reach whether section 1983 provides a private cause of action for violating NEPA. For, assuming that the section does, the plaintiffs could not obtain any relief against the state officials under the theory. As already ex-

plained, NEPA applies only to major federal action, not state or local action, and CZMA precludes a finding that state officials have engaged in any federal action.

■ The plaintiffs' third theory for relief against the state officials is that the state officials are appropriate and necessary parties for this court to provide temporary equitable relief pending completion of federal review of the 1985 amendment. The plaintiffs also assert this theory against the private developer. As already noted, the federal officials have yet to reach a final decision on whether NEPA requires preparation of a supplemental environmental impact statement on the 1985 amendment. However, the plaintiffs contend that, absent an injunction against state officials and the private developer to preserve the status quo, federal review under NEPA would be substantially impaired. The court agrees, and further concludes that such temporary relief would not conflict with CZMA.

The court's equitable authority under the All Writs Act "extends, under appropriate circumstances, to persons, who though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, .... and encompasses even those who have not taken any affirmative action to hinder justice." *United States v. New York Telephone Company*, 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977) (citations omitted). *See also Washington v. Washington State Commercial Passenger Fishing Vessel Association*, 443 U.S. 658, 692 n. 32, 99 S.Ct. 3055, 3078 n. 32, 61 L.Ed.2d 823, *modified on other grounds*, 444 U.S. 816, 100 S.Ct. 34, 62 L.Ed.2d 24 (1979). The

plaintiffs may therefore obtain an injunction against the state officials and the private developer if the circumstances of this case warrant the court's taking steps to preserve the status quo and state officials and the private developer are in any way impeding the court's ability to do so.

■ In circumstances such as those presented here, the standards for issuing an injunction to preserve the status quo under the All Writs Act are essentially the same as those for issuing a preliminary injunction. *F.T.C. v. Dean Foods Company*, 384 U.S. 597, 612, 86 S.Ct. 1738, 1746–1747, 16 L.Ed.2d 802 (1966). The plaintiff must show (1) that there is a substantial likelihood that the plaintiff will prevail on the merits, (2) that the plaintiff will suffer irreparable injury if the injunction is not issued, (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the injunction will not disserve the public interest. *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354–55 (11th Cir.1983).[8] The plaintiffs have met these standards.

First, the court is convinced there is a substantial likelihood that the plaintiffs will prevail on their contention that NEPA requires a supplemental environmental impact statement for the 1985 amendment. The evidence is overwhelming that the new, comprehensive construction line established by this amendment will have a potentially significant effect on the state's beach environment; and, of course, the federal authorization of implementation of the 1985 amendment would constitute major federal action.[9]

---

8. The interests here, as expressed in NEPA, do not warrant the "heightened standards" for preliminary injunctive relief discussed in *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020 (11th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). There is no evidence that the statutory scheme and harm to jurisdiction "cut against" the availability of a status quo injunction. *Id.* at 1030. If anything, the evidence is that they support such an injunction.

9. The environmental impact statement that accompanied the approval of Alabama's program in 1979 reflected that the natural dune system was environmentally significant. There is hotly disputed but credible evidence that the construction line established by the 1985 amendment will allow destruction of that system.

Second, the evidence reflects that the plaintiffs will suffer irreparable injury. NEPA mandates that an impact statement be done *before* there is a decision made and resources committed. This opportunity will be lost forever unless the status quo is maintained. Construction on the beaches before an impact statement is done would present federal officials with a *fait accompli*. Contrary to the intent of NEPA, this result would make it more difficult, if not impossible, to change the minds of federal officials; and contrary to the intent of CZMA as well as NEPA, this result would leave the federal officials with fewer, if any, choices in reaching their decision as to how to encourage the state to broaden its view of options and to select prudently from them.[10] Moreover, it would be impractical, if not impossible, to undo any harm to the beaches caused by the construction.

Third, the court recognizes that substantial economic hardship would result from an injunction against the private developer involved in this litigation. Further delay in construction will no doubt cost money. Further, once federal officials determine whether a supplemental environmental impact statement is required, the private developer may or may not be able to proceed with construction. This contingency is itself an economic hardship. Nevertheless, the court must conclude that this economic hardship due to delay and contingency is outweighed by the irreparable damage to the beaches that would flow from construction, and by the requirement that implementation of the amendment must be preceded by a decision as to whether a supplemental environmental impact statement is needed. When Congress imposed the procedural limitations of NEPA, it concluded that delay and contingency was a small price to pay for environmental accountability. As the Eleventh Circuit stated in *National Wildlife Federation v. Marsh*, 721

F.2d 767, 786 (11th Cir.1983), regarding the destruction of certain wetlands,

> Irreparable injury is readily apparent. Absent injunctive relief, the funds in question will be expended, the wetlands will be destroyed, and those appellants who are landowners will lose their land. Issuance of the injunction may cause monetary injury to the appellees. Failure to grant the injunction, however, will cause irreparable injury to the appellants which outweighs the threatened harm to the appellees.

Fourth and finally, the public interest would also be served. It is apparent that the interests of NEPA would be served since the injunction would maintain the status quo until the federal officials have decided whether a supplemental environmental impact statement is warranted. The court is also convinced that the interests of CZMA would not be disserved. Any entity—be it local, state or federal government or a private person or group—would be subject to such an injunction. The state officials and the private developer are simply being treated like any one else. The injunction is not premised on any "federalization" of a state program or any other permanent feature that would render the state program subject to direct federal control. Rather, the injunction would be but a temporary measure, designed only to preserve the status quo until such time as the federal officials have reached a final decision on whether an environmental impact statement is required. Moreover, federal and state officials would always retain the option of voiding the injunction by terminating federal support of the state's coastal program, with state officials still able to proceed with their coastal program, albeit without federal funds. CZMA's federal-state relationship, with the ultimate statutory sanction being termination of federal funding, would remain intact.[11]

---

**10.** That state officials may have acted in anticipation of a federal decision is immaterial. For NEPA to be fully vindicated, an impact statement should be completed before any action or commitment of resources in reliance on a feder-al decision, irrespective of whether the action or commitment of resources comes before and in anticipation of the decision or after it.

**11.** In the orders denying the plaintiffs' earlier requests for preliminary injunction, *see* note 4,

## V. PLAINTIFFS' DUE PROCESS CLAIM

Finally, the court will consider the plaintiffs' due process challenge to the State of Alabama's procedures for issuing permits for construction on the state's beaches. The plaintiffs correctly base their challenge on 42 U.S.C.A. § 1983, and the court has jurisdiction to entertain their challenge under 28 U.S.C.A. §§ 1331, 1343.

### A.

The state's permit procedures are based on statute, regulation, and informal agency policy. The process begins when an application for a construction permit is filed with the Alabama Department of Environmental Management. Pursuant to its notice regulation, Rule 8–1–.28, the Department then publishes notice of the pending application in local newspapers. Such notice typically states that an application for a particular construction permit has been received; that a public comment period has been established to afford interested persons an opportunity to challenge the proposed project's compliance with applicable regulations; that written comments must be received by a certain date; that a hearing, if appropriate, may be scheduled; and that copies of the final determination and all comments received will be available for public inspection. This notice is also mailed directly to persons and organizations whose names are on a mailing list maintained by the Department. This list includes persons and groups who have expressed an interest in receiving notice of applications for coastal construction, including members of the Sierra Club, the Alabama Conservancy, the Baldwin County League of Women Voters, and the Mobile County League of Women Voters. Any person or organization may receive copies of these notices by requesting such copies from the Department.

After due consideration, the Department decides whether the construction permit should be granted. Notice of this decision is not published in the newspapers, nor is it routinely mailed to the persons or organizations on the Department's mailing list. However, pursuant to an informal policy, the Department does mail notice of its decisions to all persons who have specifically requested it in connection with a particular permit application.

An "aggrieved person" may then file an appeal to the Alabama Environmental Management Commission within 15 days if notice of the permit decision was provided or within 30 days if notice was not provided. 1975 Alabama Code § 22–22A–7(c)(1). The Commission must hold a hearing on such appeals within 45 days and issue an order modifying, approving, or disapproving the Department's action. § 22–22A–7(c)(3). That order is then appealable to the state courts. § 22–22A–7(c)(6).

### B.

▆ The plaintiffs claim that the state's failure to give notice of the Department's permit decisions violates the due process clause of the fourteenth amendment to the U.S. Constitution.[12] To resolve this claim,

---

*supra,* this court stated that, in light of CZMA, the only sanction available for a NEPA violation is termination or reduction of federal funds to the state program. The court completely sacrificed NEPA's policies to CZMA's and made no true effort to harmonize the two statutes. The effect of the court's statement was that the federal officials, when approving either a state program or an amendment to the program, could avoid complying with NEPA's requirement that an environmental impact statement be prepared *before* a decision is made and resources committed, and yet also avoid having to reckon with CZMA's sanction of termination or reduction of funds. Federal officials could simply complete the impact statement after a decision had been made and resources committed.

The court is now convinced that its earlier statement was incorrect and that it improperly denied the plaintiffs' earlier requests for a preliminary injunction on their NEPA claim. For reasons stated in the main text, the two statutes can be read in a manner that advances the policies of both.

12. On May 7, 1984, the court, on a request for a preliminary injunction, found that the state's failure to provide notice of the filing of permit applications violated the due process clause. The court understands that this due process issue is no longer alive.

the court must engage in a two-part analysis. First, it must determine whether the plaintiffs enjoy a protected property interest within the meaning of the due process clause. Second, if such a protected interest is found, the court must then determine what process is due before that interest may be extinguished. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).

■ In order to determine whether the plaintiffs enjoy a protected property interest, the court must look to state law. "Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Federal Deposit Insurance Corp. v. Morrision*, 747 F.2d 610, 613 (11th Cir.1984). In order to possess a protected property interest in a benefit, a claimant "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Callaway v. Block*, 763 F.2d 1283, 1290 (11th Cir.1985). Put differently, "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 430, 102 S.Ct. at 1155; *Callaway*, 763 F.2d at 1289. If state law imposes a "substantial restriction [on] governmental removal of a presently enjoyed benefit, a property interest normally will be recognized." *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 795 & n. 5, 100 S.Ct. 2467, 2480 & n. 5, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring).

Here, the statutory and regulatory scheme established by the State of Alabama imposes substantial restrictions on the removal of a presently enjoyed benefit. All permit applications for projects that might degrade the coastal environment are subject to review under substantive standards that significantly limit the range of alternatives available to the Alabama Department of Environmental Management. The Department's enabling statute declares that "the resources of the state must be managed in a manner compatible with the environment, and the health and welfare of the citizens of the state." 1975 Alabama Code § 22–22A–2. It also expressly recognizes "the unique characteristics of the Alabama coastal region" and provides for its "protection and enhancement." § 22–22A–2(3). Current Department regulations advance this statutory purpose. While recognizing that economic development is also an important objective, the regulations require that decisions concerning the coastal area must strike a balance between economic development and protection of natural resources. Rule 8–1–.01(2). The regulations impose substantive limitations on Department action to ensure that this goal is attained. First, any proposed action that might degrade the coastal area cannot be approved unless the Department determines that the action is justified by a "compelling public interest." Second, the regulations place the burden of demonstrating a compelling public interest on the party who has proposed the action. Third, even if a compelling public interest is found, the proposed action must be tailored, "to the maximum extent practicable," to minimize degradation of the coastal environment. Rule 8–1–.05(2)(a). Applications for construction permits, in particu-

---

Also, in their briefs filed in support of their due process claims, the plaintiffs have expanded their claim to a broad, scattergun attack on many aspects of the state's permit procedures, except the due process issue previously resolved. The plaintiffs did not make such a broad attack in their complaint, as amended, and it is apparent that the new issues raised are but after-

thoughts. Moreover, the plaintiffs' discussions of these new issues in their briefs are very fuzzy and the court has found it very difficult to even understand their nature and scope. The court therefore declines to consider the new issues raised. The court leaves these issues for another day and another lawsuit.

lar, are subject to review under these standards. No permit may issue unless the Department has determined that the use "is consistent with overall policies and purposes of the management program and [its] rules." Rule 8–1–.21(5).

■ The total regulatory scheme discussed above creates "an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 430, 102 S.Ct. at 1155. The entitlement created is the use and enjoyment of Alabama's "unique" natural coastline. The "cause" required to remove that entitlement is a compelling public interest such as economic development. A protected property interest has therefore been created under state law.

As already noted, once it is determined that a protected property interest exists, "the question remains what process is due." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), *quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Due process "is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481, 92 S.Ct. at 2600. This court must now determine whether the Department's failure to provide notice of its permit decisions runs afoul of the due process clause.

Here, the State of Alabama has established a system of appeals from the Department's permit decisions. The law is clear that, having established such an appellate system, state officials are constitutionally required "to administer that system in a manner consistent with established concepts of due process." *Brandt v. Hickel*, 427 F.2d 53, 56 (9th Cir.1970). Thus, "a party who is adversely affected

by a ... decision must be afforded proper notice of action ... which has been taken" so that the party may take timely advantage of the appeal process. *Id.* *See also Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *North Alabama Express, Inc. v. United States*, 585 F.2d 783 (5th Cir. 1978).

Under current procedures, the Department's decision to grant a permit triggers a very brief statute of limitations that, once past, eradicates any right to appeal to the Alabama Environmental Management Commission and eventually to the state courts. Given the critical need for prompt action following a decision to grant a permit, notice of the Department's decision takes on special importance. Without that notice, a person or group adversely affected by a decision would not know that the period for perfecting an appeal was running. The Department, however, does not provide a means by which a person or group may learn of its decision. The Department's permit procedures are therefore constitutionally defective.

Admittedly, the notice given when a permit application is filed with the Department does say that final permit decisions are available for public inspection. However, interested persons would have to visit the Department's office on an almost daily basis to determine whether the brief statute of limitations on a given permit decision had begun to run. Such a requirement is patently unreasonable. Moreover, the Department cannot rely on its informal policy of providing final action notice to anyone who requests it. The Department does not inform parties adversely affected by a decision that they may protect their rights by making such a request. An informal policy that is, for all purposes, a secret cannot satisfy the strictures of due process.

The court, however, declines at this time to determine how state officials should amend the Department's permit procedures to cure their constitutional defect.[13] The

**13.** It appears to the court at this time that there

may be two or more ways to amend the permit

court is of the opinion that state officials should first be given an opportunity to amend the permit procedures to cure this defect. The court will therefore limit its relief at this time to the following: First, the court will declare that the state's permit procedures are constitutionally defective to the extent the procedures fail to provide a reasonable means by which a person or organization adversely affected by a permit decision of the Department may learn of the permit decision in enough time to perfect an appeal to the Alabama Environmental Management Commission; and, second, the court will allow state officials 14 days from this date to develop and submit to the court proposed permit procedures that cure this defect, and will allow the plaintiffs seven days thereafter to respond to the state's proposed procedures.

## VI. CONCLUSION

In conclusion, the plaintiffs are entitled to an injunction against the state officials and the private developer preserving the status quo until such time as the federal officials reach a decision on whether a supplemental environmental impact statement is required for the 1985 amendment.[14] The court will offer the parties an opportunity to submit their proposals as to what should be done to preserve the status quo. Furthermore, the plaintiffs are entitled to a declaration that Alabama's procedures for issuing permits for construction on the state's beaches are constitutionally defective to the extent the procedures fail to provide a reasonable means by which persons and organizations adversely affected by permit decisions may learn of such decisions in enough time to appeal them. Again, the court will offer the state defendants and the plaintiffs an opportunity to propose procedures that would cure the constitutional defects in the state's permit procedures. The parties are encouraged to attempt to agree to an appropriate solution

procedures to cure the constitutional defect.

**14.** Whether the injunction should be extended after the federal officials have reached a decision is a matter the court leaves for another day. At that time, the court will have the bene-

with respect to both the status quo issue and the due process issue.

An appropriate judgment and injunction will be entered.

fit of the federal officials' decision and can reassess whether the plaintiffs are entitled to continued injunctive relief in light of that decision.