The Birmingham News Company (News) brought this action against the members of the Birmingham Board of Education, alleging that the Board had excluded the public from meetings during which it interviewed applicants for the position of Superintendent of the Birmingham School System, in violation of Section 13A-14-2, Code of Alabama (1975). The circuit court issued an order enjoining the defendants from excluding the public from interviews conducted by the Board. The order provided that the public could be excluded if subjects were discussed regarding the character or good name of the applicant.
Section 13A-14-2 provides:
 "(a) No executive or secret session shall be held by any of the following named boards, commissions or courts of Alabama, namely: Alabama public service commission; school commissions of Alabama; board of adjustment; state or county tax commissions; any county commission, any city commission or municipal council; or any other body, board or commission in the state charged with the duty of disbursing any funds belonging to the state, county or municipality, or board, body or commission to which is delegated any legislative or judicial function; except, that executive or secret sessions may be held by any of the above named boards or commissions when the character or good name of a woman or man is involved."
The Board hired consultants from the National School Board Association Search Service to aid it in selecting the new superintendent. The consultants, in accordance with the Association's established procedures, established the following plan for conducting the search. The consultants solicited applicants on a nationwide basis from among those qualified for the position. They assured the applicants that their identity would not be revealed unless they were among the two or three finalists for the position. The consultants then screened the applications and recommended a few applicants to the Board for it to interview and to select from.
Nine candidates were recommended to the Board for interview. The consultants recommended that the interviews be conducted in private in order to provide for a free and open inquiry into the applicants' qualifications and to maintain the applicants' anonymity. Board members were not to discuss the applicants or make any decisions until all interviews were completed. After the Board reduced the number of applicants to a number between two and four the finalists' names would be made public. The final selection would be made at a public meeting.
As of the date of the hearing on the request by the News for an injunction, four of the interviews had been completed. Subsequent to the trial court's ruling, the Board conducted interviews of three of the remaining candidates and selected a Superintendent from among those interviewed.
In Miglionico v. Birmingham News, 378 So.2d 677 (Ala. 1979), the circuit court enjoined the Birmingham City Council from excluding the public from meetings held to consider an appointment to the city board of education. At the meetings the council members interviewed potential appointees and indicated their preferences by making marks on sheets of paper. This Court ruled that the council should be enjoined from holding closed sessions to consider the appointments except when an individual's character or good name is involved. If a closed session is held, nothing other than the individual's good name or character may be discussed. Miglionico at 682. *Page 1323 
Appellants attempt to distinguish this case from Miglionico
on the fact that no decisions were to be made during the interviews in question. In Miglionico the council members marked their preferences on pieces of paper during the meetings. The selection of a new superintendent in this case, on the other hand, was to take place at a subsequent public hearing. Appellants argue that a "session" is a meeting of a judicial or legislative body for the purpose of transacting business and that in this instance the board members were acting as individuals, not as a body in conducting the interviews. The board argued that they did not gather to conduct business and that the interviews did not, therefore, constitute "sessions" within the meaning of the statute. SeeDayton Newspapers, Inc. v. City of Dayton, 28 Ohio App.2d 95,274 N.E.2d 766 (1971).
We disagree. Under this statute all meetings of these bodies named, whether formal or informal, whether or not an official vote is taken, must be open to the public, except where the character or good name of a person is involved. The right to public access extends to the entire process from public policy discussion and formulation through adoption and enforcement. Otherwise, business could be conducted in secrecy and public meetings held only to ratify decisions already made in secret. Courts in other states have rejected attempts to draw a distinction between formal and informal meetings. See OrangeCo. Publications v. Newburgh City Council, 60 A.D.2d 409,401 N.Y.S.2d 84 (1978); Sacramento Newspaper Guild v. SacramentoCo., 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968).
The board also made policy arguments to the effect that the assurance of anonymity of the applicants was of crucial importance to the public interest in securing the best qualified applicants possible for the position. The board argues that courts must balance the public's right to know what public officials are doing with the public's interest in having the business of government carried on efficiently and without interference. Notwithstanding the absence of any express exception in the statute covering the precise situation involved, the board would have this court impose limitations on public access to the interviews by application of a "rule of reason."
As this court noted in Miglionico, most sunshine laws have a list of exceptions which cover interviews of prospective appointees. Miglionico, supra, at 681. Our legislature, however, saw fit not to include any exceptions other than the one governing "character or good name." While that exception will apply to certain aspects of the interview process, it is not broad enough, in our opinion, to justify the exclusion of the public to the extent that the candidates could remain anonymous to the public. That omission in our statute was pointed out to the legislature over four years ago in theMiglionico decision. The legislature has not amended the statute, and we deem it inappropriate to engraft by judicial fiat a change the legislature has apparently chosen not to make.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.