Bart Slawson and Naomi Furman appeal from a summary judgment entered in favor of the defendants, the Alabama Forestry Commission ("the Commission"); individual members of the Commission; and Bill Moody, the Alabama state forester. We affirm in part, reverse in part, and remand.
A summary judgment is appropriate when (1) there is no genuine issue as to any material fact and (2) the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. Because the parties do not dispute the facts in this case, we must determine whether the trial court properly applied the law to the facts in entering a summary judgment for the defendants.
The facts of this case, as agreed to by all parties, indicate that the Commission has used its resources, including the services of state personnel and equipment, to organize, promote, and support various nonprofit organizations *Page 955 
or "cooperators" whose goals or objectives, according to the Commission, are consistent with the overall objectives of the Forestry Commission. At issue in this case is the Commission's support of a private nonprofit organization known as Stewards of Family Farms, Ranches, and Forests ("Stewards").[1] The purposes of Stewards, according to its by-laws, is to promote stewardship among private landowners, to protect these landowners' private property rights "by confronting environmental and political extremism in the public and/or political arena," and to develop and implement "a national strategy designed to confront actions which threaten private property rights of family farm, ranch, and forest owners." Stewards opposes certain state and federal laws, such as estate taxation laws and numerous federal environmental laws, that, it contends, interfere with private property rights.
Slawson and Furman sued the Alabama Forestry Commission and its members, seeking declaratory and injunctive relief. They contended that the Commission's support of Stewards violates §§ 93 and 94, as amended, of the Alabama Constitution of 1901. Slawson and Furman further contended that the Commission failed to provide the public with notice of a meeting it held by special session on October 7, 1992, at which the Commission passed a resolution approving the use of Commission resources and the continued involvement of the state forester, Bill Moody, in promoting Stewards of Family Farms.[2] Slawson and Furman sought a judgment declaring that the Commission's failure to provide notice of its October 7, 1992, meeting violated of Alabama Code 1975, § 13A-14-2 (the Sunshine Law), and violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. They sought to enjoin the defendants from meeting in secret, from meeting without prior public notice, and from using state funds, personnel, and resources to support Stewards. The trial court entered a summary judgment for the defendants. Slawson and Furman appeal.
The issues for our review are whether the trial court erred, as a matter of law, in holding that the defendants' financial support of Stewards did not violate §§ 93 and 94 of the Constitution of Alabama, and in holding that neither the Due Process Clause of the Fourteenth Amendment nor our Sunshine Law requires the Alabama Forestry Commission to give public notice of its special meetings.
 The State Constitution Issue
Section 93, Alabama Constitution of 1901, as amended by Amendment No. 58, prohibits the state from being interested in any private or corporate enterprise or from lending "money or its credit to any individual, association, or corporation."Edmonson v. State Indus. Dev. Auth., 279 Ala. 206,184 So.2d 115 (1966). This section has been interpreted as banning the state or other public entities of the state from engaging in private enterprise. Edmonson. Section 94, as amended by Amendment No. 112, prohibits *Page 956 
the legislature from authorizing any subdivision of this state to "grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever." Sections 93 and 94 have been interpreted as allowing the appropriation of public revenues in the aid of an individual, association, or corporation only when the appropriation is for a "public purpose." Board of Revenue Road Comm'rs of Mobile County v.Puckett, 227 Ala. 374, 149 So. 850 (1933); Opinion of theJustices No. 269, 384 So.2d 1051 (Ala. 1980); Opinion of theJustices No. 261, 373 So.2d 290 (Ala. 1979). Thus, for instance, the state or other public entities may donate public money or other things of value to a volunteer fire department or a rescue squad because these are organizations that benefit the general public and are not engaged in private enterprise and therefore have a lawful public purpose. Opinion of the JusticesNo. 261, 373 So.2d at 292.
In Opinion of the Justices No. 269, 384 So.2d 1051, this Court was asked whether the appropriation of state funds to non-state agencies and organizations was for a "public purpose" and, thus, did not violate §§ 93 and 94 of our constitution, as interpreted by Puckett, supra. Although we were unable to give an advisory opinion because the question asked presented a mixed question of law and fact, we did provide guidelines as to what constituted a "public purpose." Quoting Clifford v. Cityof Cheyenne, 487 P.2d 1325, 1329 (Wyo. 1971), we stated that, generally speaking, a public purpose "has for its objective the promotion of public health, safety, morals, security, prosperity, contentment, and the general welfare of the community." 384 So.2d at 1053 (citations omitted).
 "The paramount test should be whether the expenditure confers a direct public benefit of a reasonably general character, that is to say, to a significant part of the public, as distinguished from a remote and theoretical benefit. . . . The trend among the modern courts is to give the term 'public purpose' a broad expansive definition."
Id. "[T]he question of whether or not an appropriation was for a public purpose [is] largely within the legislative domain rather than within the domain of the courts." Id. at 1052;Opinion of the Justices No. 261, 373 So.2d 290; Puckett, supra.
 "The Legislature has to a great extent the right to determine the question, and its determination is conclusive when it does not clearly appear to be wrong, assuming that we have a right to differ with them in their finding. . . . Taken on its face, it is our duty to assume that the Legislature acted within constitutional limits and did not make a donation, when such construction is not inconsistent with the recitals of the act."
Puckett, supra, 227 Ala. at 377-78, 149 So. at 852.
Our earlier decisions deferred to the legislature's determination that the appropriations were for a public purpose. The trial court, in its summary judgment order, relied on these decisions in giving deference to the Commission's determination, "absent compelling evidence to the contrary," that its support of Stewards was "for a public purpose in a broad, general sense." The trial court found that Slawson and Furman did not meet their burden of proving that the Commission's support of Stewards was "clearly wrong, illegal, or unconstitutional."
Slawson and Furman argue that the Commission's support of Stewards through the use of state funds, resources, and personnel does not confer "a direct public benefit of a reasonably general character" upon the people of Alabama. The legislature has given the Alabama Forestry Commission authority to "give such advice, assistance and cooperation as may be practicable to private landowners and promote, so far as it may be able, a proper appreciation in this state among all classes of the population of the benefits to be derived from forest culture, preservation, and use." Code 1975, § 9-13-3(a). The Commission's October 7, 1992, resolution indicates that, in its opinion, Stewards' goals are compatible with the objectives of the Forestry Commission. Moody, in his affidavit in support of the defendants' summary judgment motion, states:
 "[A]ll the actions of the Forestry Commission are designed to promote the public *Page 957 
good by maintaining healthy forests. One way we do this is by helping private landowners to develop and maintain environmentally healthy and economically sound forests. We are convinced that activities of Stewards of Family Farms, Ranches and Forests will complement, and in no way conflict with, this mission."
Applying a broad, expansive definition of "public purpose," the trial court determined that Slawson and Furman had failed to clearly prove that the Commission's support for Stewards was not for a public purpose.
In reviewing the judgment of a trial court, this Court will not presume error and will affirm the trial court's judgment if it is supported by any valid legal ground. Turner v. Clutts,565 So.2d 92, 94 (Ala. 1990); Odom v. Blackburn, 559 So.2d 1080
(Ala. 1990). We cannot say that the trial court erred by giving deference to the Commission's determination that its support of Stewards was for a proper public purpose. Therefore, we affirm the trial court's judgment that the Commission's support of Stewards did not violate §§ 93 and 94 of the Alabama Constitution.
 The Notice Issue
Slawson and Furman contend that the Commission must give the public notice of any special meeting, and that the Commission violated the Due Process Clause of the Fourteenth Amendment and violated the Alabama Sunshine Law, § 13A-14-2, by not providing public notice of its October 7, 1992, meeting.[3]
The appellees argue that, because the Commission is now providing public notice of its meetings, the notice issue is moot and cannot be decided by this Court. Smith v. Cook,578 So.2d 1055, 1057 (Ala. 1991). The record indicates that the Commission provided public notice of its meetings years ago, but discontinued that practice because the public did not attend, and that the Commission is now providing notice to the public once again. "The general rule in this state is that if, pending an appeal, an event occurs which makes determination of the case unnecessary, the appeal will be dismissed." Adams v.Warden, 422 So.2d 787, 790 (Ala.Civ.App. 1982). An exception to this general rule exists where "a broad public interest is involved." Payne v. J.T.N., 568 So.2d 830, 831
(Ala.Civ.App. 1990). We consider the public's interest in receiving notice of public meetings to be a "broad public interest"; therefore, we may properly decide this issue.
"[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action."Brown's Ferry Waste Disposal Ctr., Inc. v. Trent,611 So.2d 226, 228 (Ala. 1992). Therefore, we must first determine whether the appellants have a protected interest or right within the meaning of the Due Process Clause before we may address the question of what notice, if any, was constitutionally required. See Save Our Dunes v. Pegues, 642 F. Supp. 393, 408-09
(M.D. Ala. 1985), reversed on other grounds, Save Our Dunes v.Alabama Dep't of Envtl. Management, 834 F.2d 984 (11th Cir. 1987).
 "To have a protectable right a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. The courts have rejected the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. The question is not merely the weight of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."
Ellard v. State, 474 So.2d 743, 754 (Ala.Crim.App. 1984),affirmed, 474 So.2d 758 (Ala. 1985) (citations omitted). *Page 958 
Although the Sunshine Law gives the appellants standing to enforce their right to attend Commission meetings,Miglionico v. Birmingham News Co., 378 So.2d 677, 680
(Ala. 1979), we find no evidence that the appellants have been deprived of any life or liberty interests that would give rise to procedural due process protections. We must also agree with the trial court that "there is no evidence that the [appellants] have any specific property interest of any nature that has been detrimentally affected by any action of the [appellees]." Thus, we hold that, under the facts of this case, the appellants have no constitutional due process right to receive notice of the Commission's special meetings.
We do conclude, however, that the Sunshine Law requires the Commission to provide public notice of its special meetings. The Law's requirement that meetings be open to the public has been interpreted to mean that the public cannot be excluded from attending meetings that are subject to the Sunshine Law.See, e.g., Dale v. Birmingham News Co., 452 So.2d 1321, 1323
(Ala. 1984). The Law itself contains no language expressly requiring that the public be given notice of these meetings. The sunshine laws of most states require that some form of notice be provided to the public. The appellants refer us to the cases of two other jurisdictions that require reasonable notice for public meetings even when the statute is silent as to notice. These cases indicate that the public must be aware of a meeting in order for that meeting to be open to the public. The Minnesota Supreme Court stated:
 "The language of the statute directing that meetings be open to the public is meaningless if the public has no knowledge that the meeting is to take place. Therefore, we believe that the statute, by implication, requires adequate notice of the time and place of the meeting. The mere fact that the meeting-room door is unlocked is not sufficient compliance with the directive of the statute."
Sullivan v. Credit River Township, 299 Minn. 170,217 N.W.2d 502, 505 (1974). Florida courts have also held that reasonable notice is a mandatory requirement under Florida's sunshine law.Hough v. Stembridge, 278 So.2d 288, 291 (Fla.App. 3 Dist. Ct. App. 1973); Yarbrough v. Young, 462 So.2d 515, 517
(Fla.App. 1 Dist. Ct. App. 1985).
 "Although the statute does not contain a specific notice requirement, it has been held that 'reasonable notice' of a public meeting is mandatory in order for the meeting to be public in essence. . . . And in a 1973 attorney general's opinion, it was stated that the meaning of the term 'due public notice' would vary depending on the fact situation, but that its purpose was to apprise the public of the pendency of matters that might affect their rights, afford them the opportunity to appear and present their views, and afford them a reasonable time to make an appearance if they wished."
Rhea v. City of Gainesville, 574 So.2d 221, 222 (Fla. Dist. Ct. App. 1991) (citations omitted).
The Commission contends that we should follow the Georgia Supreme Court, which has indicated that "[Georgia's] Sunshine Law deals with the openness of public meetings, not with the notice of such meetings." Harms v. Adams, 238 Ga. 186, 187,232 S.E.2d 61, 62 (1977). The Georgia court held that Georgia's sunshine law did not require notice, and it indicated that meetings were not to be considered closed when there was no evidence "that any person was excluded from or denied admission to the meetings." Id.; see also Dozier v. Norris, 241 Ga. 230,231, 244 S.E.2d 853, 855 (1978) (sunshine law does not require notice). Although at the time of Harms and Dozier, the applicable Georgia statute, Ga. Code Ann. § 40-3301 (1977), did not expressly require notice, we note that the statute was amended in 1980 to require that notice be given to the public, Ga. Code Ann. § 40-3301(e) (Supp. 1982), now codified at O.C.G.A. § 50-14-1(d).[4] *Page 959 
For the above reasons, we hold that the Alabama Sunshine Law does require that reasonable notice be given to the public of those meetings that must be open to the public under §13A-14-2, Ala. Code 1975. The public must be given a reasonable opportunity to be aware of the place where the notice will be posted; and the time, date, and place of the meeting must be available to the public upon reasonable inquiry. When special circumstances arise or when a meeting is called for truly emergency purposes, the agency holding the meeting should so declare and should give such notice as is reasonable under the circumstances, unless the giving of such notice is impractical or impossible. That portion of the judgment of the trial court holding that notice is not required under § 13A-14-2 is reversed, and the cause is remanded for further consideration of the notice issue consistent with this opinion.
 Issue of Costs and Attorney Fees
Finally, the appellants request an award of reasonable costs and attorney fees; such an award is appropriate when the trial court determines that a case will result in a benefit to the general public. State v. Brown, 577 So.2d 1256 (Ala. 1991);Brown v. State, 565 So.2d 585 (Ala. 1990). The award of attorney fees may be appropriate in an action based on § 13A-14-2, Bellv. Birmingham News Co., 576 So.2d 669, 670-71
(Ala.Civ.App. 1991). This is an issue for the trial court to determine on remand.
For the foregoing reasons, the judgment is affirmed in part and reversed in part, and the cause is remanded for further consideration.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and INGRAM, JJ., concur.
[1] Bill Moody, the state forester, is the head of the Stewards organization. The Commission's legal counsel, Linda Breland, assisted in drafting Stewards' by-laws and articles of incorporation. Although the Commission contends it has not given any money directly to Stewards, the Commission has used the resources and services of members of its Forest Education Division, and has spent approximately $8730.60 in promoting Stewards, of which $7500 was from a grant given to the Alabama Forest Resources Center to further its programs designed to "foster, encourage, develop and promote Alabama's forest resources, forest products and forestry's overall contribution to the state." C.R. 452-53.
[2] The resolution, in its entirety, states:
 "In the belief that the promotion of good stewardship of farms, ranches and forests, and the defense of private landowner rights are essential in promoting forestry in the State of Alabama, the Alabama Forestry Commissioners approved the continued involvement of the State Forester in promoting these principles within the State of Alabama. Use of Forestry Commission resources shall be limited to those that have traditionally been provided to other non-profit cooperators within the state. No separate appropriations or cash outlays will be made for the Stewards of Family Farms, Ranches and Forests organization. The State Forester is within the bounds of his job to help with the promotion of this organization as long as it remains a part of his total responsibility to the people of Alabama and the Alabama Forestry Commission's overall objectives."
C.R. 93, 446.
[3] The Commission must hold two regularly scheduled meetings each year, in January and in June, and is authorized to call special meetings at other times. Section 9-3-2, Ala. Code 1975. The Commission normally records the time and place of each regular meeting six months in advance in the minutes of the prior regular meeting. These minutes are public records available for inspection at the Commission's main office in Montgomery.
[4] The Georgia sunshine law now states:
 "Every agency shall prescribe the time, place, and dates of regular meetings of the agency. Such information shall be available to the general public and a notice containing such information shall be posted and maintained in a conspicuous place available to the public at the regular meeting place of the agency. . . . Whenever any meeting required to be open to the public is to be held at a time or place other than at the time and place prescribed for regular meetings, the agency shall give due notice thereof."
O.C.G.A. § 50-14-1(d) (Supp. 1993).