[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 295 
 I. Introduction
Defendants Auburn University and the members of the Auburn University Board of Trustees ("the Board") appeal the summary judgment and the permanent injunction entered in favor of plaintiffs The Advertiser Company d/b/a The Montgomery Advertiser, and seven other newspapers (hereinafter collectively called "the newspapers") on their claims for injunctive and declaratory relief to redress alleged violations of the Sunshine Law, § 13A-14-2, Ala. Code 1975. We affirm in part, reverse in part, and remand with instructions.
 II. Procedural posture
On February 28, 2001, the newspapers filed a declaratory judgment action for a declaration that Auburn University had violated the Sunshine Law. They also sought an injunction prohibiting Auburn University from violating the Sunshine Law. Specifically, the newspapers sought to prevent (1) meetings and pollings of trustees by telephone, E-mail, and mail, (2) trustees' gathering in groups of three or more to discuss Auburn University business, and (3) meetings of trustees in executive session. The newspapers sought to require Auburn University to disclose (1) the date, time, and place of any meeting of three or more trustees and (2) the date, time, issues addressed, and members "polled via telephone, e-mail, or regular mail" on any occasion within the two years next preceding the filing of the action by the newspapers.
On April 4, 2001, Auburn University filed a declaratory judgment action against the newspapers and asked the trial court to declare the Sunshine Law, § 13A-14-2, Ala. Code 1975, inapplicable to meetings of *Page 296 
trustees unless a quorum of the Board "gathers to discuss the business of Auburn University." On April 24, 2001, the newspapers amended their complaint by adding each individual trustee in his or her official capacity as an additional defendant. On April 25, 2001, "[b]y agreement of the parties," the trial court consolidated the two actions.
On May 9, 2001, the newspapers moved for a preliminary injunction
 "enjoining [the trustees] from conducting committee meetings during the pendency of this suit without compliance with the Alabama Sunshine Law, including but not limited to, requirements to provide reasonable notice to the public of said meetings and to refrain from meeting in executive session in committee meetings unless their discussions fall within recognized exceptions to the Alabama Sunshine Law."
On June 11, 2001, the parties stipulated to the entry of a preliminary injunction. The stipulation expressly stated that Auburn University and the trustees did not concede the correctness of the newspapers' interpretation of the Sunshine Law. On June 12, 2001, the trial court entered a preliminary injunction, in pertinent part:
 "1. Said Defendants are hereby enjoined and restrained from conducting any meeting of any standing committee of the Auburn University Board of Trustees unless such meeting is open to the public and has been preceded by reasonable advance public notice. See Slawson v. Alabama Forestry Commission, 631 So.2d 953 (Ala. 1994). Exceptions to the Open Meetings Law, Ala. Code § 13A-14-2, that allow for executive sessions shall also be exceptions to this injunction.
 "2. This preliminary injunction shall remain in effect until entry by the Court of its final judgment(s) in these consolidated actions, and shall automatically expire and have no further force and effect at that time."
In their responses to requests for admissions, Auburn University and the trustees admitted to the following 16 violations of the Sunshine Law:
 1. On April 9, 1999, the full Board met in secret session to discuss a possible merger with Wallace State Community College;
 2. On June 7, 1999, the full Board met in secret session to discuss the organizational structure of the Board;
 3. On August 20, 1999, the full Board met in secret session to discuss who could use the seats in the trustees' football suite;
 4. On September 22, 1999, the full Board met in secret session to discuss the then pending lottery legislation;
 5. On November 4, 1999, without publishing notice, a quorum of the Board met as the Property and Facilities Committee;
 6. On November 4, 1999, without publishing notice, a quorum of the Board met as the Investment Committee;
 7. On November 5, 1999, the full Board met in secret session to discuss a potential campaign fund drive;
 8. On November 9, 1999, without publishing notice, a quorum of the Board met as the AUM Committee;
 9. On January 13, 2000, without publishing notice, a quorum of the Board met as the AUM Committee and the Athletic Committee;
 10. On February 6, 2000, without publishing notice, a quorum of the Board met as the Investment Committee;
 11. On March 1, 2000, without publishing notice, a quorum of the Board met *Page 297 
as the Property and Facilities Committee;
 12. On May 16, 2000, without publishing notice, a quorum of the Board met as the Property and Facilities Committee;
 13. On May 25, 2000, without publishing notice, a quorum of the Board met as the Budget Committee;
 14. On August 2, 2000, without publishing notice, a quorum of the Board met as the Property and Facilities, Budget, and AUM Committees;
 15. On November 9, 2000, without publishing notice, a quorum of the Board met as the AUM, Investment, and Property and Facilities Committees; and
 16. On December 2, 2000, without publishing notice, a quorum of the Board met in Atlanta before the Southeastern Conference championship game.
Auburn University and the trustees also admitted that the Board maintained a policy requiring that the Board meet in executive session to discuss awarding an honorary degree to an individual or to discuss naming a building after an individual. They admitted that the Board had met in executive session to address complaints about an Auburn University administrator by an alumni contributor. They further admitted that the Board maintained a policy of meeting in executive session with its attorney when the Board believed it was discussing matters protected by the attorney-client privilege regardless of whether litigation was pending.
On July 30, 2001, the newspapers moved for a summary judgment on the ground that Auburn University and the trustees had violated the Sunshine Law on 39 occasions from April 9, 1999 through February 14, 2001. Auburn University and the trustees also moved for a summary judgment on three grounds: (1) the statute of limitations barred any claims for conduct occurring before February 28, 2000; (2) the Sunshine Law does not restrict meetings of fewer trustees than a quorum; and (3) the newspapers had not submitted substantial evidence that a quorum of trustees was present at any meeting challenged by the newspapers.
The evidentiary materials in support of or in opposition to the cross motions for summary judgment were all written. No evidence was ore tenus. The materials included portions of deposition testimony. After a hearing, on August 15, 2001 the trial court entered the following order:
 "1. There are no genuine issues of material fact in dispute.
 "2. The Defendants . . . as members of the Board of Trustees of Auburn University have violated the provisions of Section 13A-14-2[, Ala. Code 1975,] by:
 "(a) Meeting in secret as a Board, and in Committees, without providing reasonable public notice of the time, date and location of said meetings; and
 "(b) Meeting in executive sessions to discuss `good name and character' of individuals and/or to discuss matters with attorneys which exceed permissible limits of the exceptions allowed by the Alabama Sunshine Law.
 "This Opinion answers the request for Declaratory Judgment in Case #2 [the case filed by Auburn University].
 "IT IS, THEREFORE, ORDERED BY THE COURT that a permanent injunction is issued against the Defendants . . . in their capacities as the Auburn University Board of Trustees enjoining them from:
 "(1) Meeting in groups of three or more, either as a Board or in Committee, for the purpose of discussing the business of Auburn University without providing reasonable public notice of *Page 298 
the time, date, and place of such meeting; and
 "(2) Meeting in groups of three or more, either as a Board or in Committee, in executive session unless for the purpose of discussing the `good name and character' of an individual as that phrase is defined by the Alabama Supreme Court in Miglionico v. Birmingham News[, 378 So.2d 677 (Ala. 1979)]; and
 "(3) Meeting in groups of three or more, either as a Board or in Committee, in executive session unless for the purpose of receiving legal advice from the attorney for the Board of Trustees concerning `pending litigation' as that phrase is defined by the Alabama Supreme Court in [Dunn v. Alabama State University Board of Trustees, 628 So.2d 519 (Ala. 1993), overruled on other grounds, Watkins v. Board of Trustees of Alabama State University, 703 So.2d 335
(Ala. 1997)];
 "It is further Ordered by the Court that the Motion for Summary Judgment filed by the Plaintiffs in Case No. CV 01-125 is GRANTED." (Capitalization original; emphasis added.)
 III. Undisputed facts
Auburn University is a "body corporate" under the control of a board of trustees. § 16-48-1, Ala. Code 1975. Before February 20, 2001, the Board was composed of 12 trustees. Amendment 161, Alabama Constitution of 1901. Six trustees constituted a quorum. § 16-48-8, Ala. Code 1975. The trustees organized themselves into various standing committees. Each of the various standing committees was composed of five trustees. However, any trustee could attend any standing committee meeting. Three members of a standing committee constituted a quorum for that committee. While a quorum of a committee was empowered to make recommendations to the Board, most committees required a consensus to recommend a proposal to the Board. Most standing committees did not vote on proposals. Except for the "Property and Facilities Committee" and for the "Athletic Committee," no standing committee was authorized to take any action on behalf of the Board. The standing committees did not publish notice of their scheduled meetings. Additionally, on occasion, three or more trustees, but fewer than a quorum of the Board, met on an ad hoc basis to discuss Auburn University business.
Amendment 670, Alabama Constitution of 1901, ratified December 13, 2000, increased the membership of the Board to 14 trustees. On January 6, 2001, six trustees met as the Athletic Committee to discuss the "Athletics Foundation." On February 20, 2001, the Alabama Senate confirmed two additional at-large trustees for membership on the Board. Ever since February 20, 2001, eight trustees have constituted a quorum. Amendment 670. On June 4, 2001, the Board amended its bylaws to increase the membership of each standing committee to six trustees. On July 23, 2001, the Board amended its bylaws to require "[e]ach standing or special committee [to] provide reasonable prior notice of scheduled meetings and [to] prepare and maintain minutes of its meeting except for meetings of the Executive Committee in Executive Session." Further, section 4.8 of the bylaws provides:
 "All matters considered by standing or special committees shall be reported to the Board with an advisory recommendation for action by the Board. The report shall include a summary of committee members' comments on the matters reviewed and suggestions for further administrative action." *Page 299 
 IV. Issues
On appeal, Auburn University and the individual trustees raise four issues: (1) whether the one-year misdemeanor statute of limitations governs civil actions for violations of the Sunshine Law; (2) whether the Sunshine Law restricts meetings of fewer trustees than a quorum of a committee or of the Board; (3) whether the Board violated the Sunshine Law when a quorum of trustees met "in executive session to discuss whether to name a building or award an honorary degree to a person, and review the person's `personal traits'"; and (4) whether the attorney-client privilege exception to the Sunshine Law established inDunn v. Alabama State University Board of Trustees, 628 So.2d 519 (Ala. 1993), overruled on other grounds, Watkins v. Board of Trustees ofAlabama State University, 703 So.2d 335 (Ala. 1997), includes meetings of the Board to discuss litigation threatened but not yet filed or to obtain legal advice about the legal ramifications and consequences of a specific proposal.
 V. Standard of review
"Appellate review of a trial court's ruling on a motion for summary judgment submitted on exhibits and written evidentiary materials is denovo, with no deference to the decision by the trial court." Ex parteBreitsprecher, 772 So.2d 1125, 1129 (Ala. 2000). See also Bank ofBrewton, Inc. v. International Fid. Ins. Co., 827 So.2d 747 (Ala. 2002). "Legal conclusions are never accorded a presumption of correctness on appellate review." Ex parte Cain, 838 So.2d 1020, 1026 (Ala. 2002).
 "To grant a motion for a summary judgment, the court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. If the party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact."
Bank of Brewton, Inc., 827 So.2d at 752 (citations omitted). "The appellate court will accept the tendencies of the evidence most favorable to the nonmoving party and will resolve all reasonable doubts in favor of the nonmoving party." Ex parte Breitsprecher, 772 So.2d at 1129.
 "The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So.2d 719 (Ala. 1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says. IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344
(Ala. 1992)."
Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala. 1996).
 VI. Sunshine Law
The Sunshine Law, § 13A-14-2, provides:
 "(a) No executive or secret session shall be held by
any of the following named boards, commissions or courts of Alabama, namely: Alabama Public Service Commission; school commissions of Alabama; board of adjustment; state or county tax commissions; any county commission, any city commission or municipal council; or any other body, board or commission in the state charged with the duty of disbursing any funds belonging to the state, county or municipality, or board, body or commission to *Page 300 
which is delegated any legislative or judicial function; except, that executive or secret sessions may be held by any of the above named boards or commissions when the character or good name of a woman or man is involved.
 "(b) Any person or persons violating any of the provisions of this section shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than $10.00 nor more than $500.00. Any person who remains in attendance upon any meeting of any of the above named boards or bodies which is being held in secret or executive session shall be deemed guilty of violating the provisions of this section." (Emphasis added.)
In Advertiser Co. v. Wallis, 493 So.2d 1365 (Ala. 1986), this Court defined the entities governed by the Sunshine Law:
 "'commission: a group of persons directed to perform some duty or execute some trust: a body of commissioners; a government agency having administrative, legislative, or judicial powers.'
 "'board: a number of persons appointed or elected to sit in council for the management or investigation of a public or private business, trust, or other organization or institution.'
 "'body: a group or number of persons or things: as . . . a group of individuals united by common ties or organized for some purpose.'
 "Thus, these words all denote a group of individuals acting together to perform some purpose. We think significant also the phrase found in the definition of `board,' that the persons `sit in council.' As we shall set forth more fully in the following discussion, we find that the entities to which the Sunshine Law applies are only those governed by a group of individuals who sit as a deliberative body to set policy regarding the public matters with which the entity is entrusted. Indeed, it is meetings at which this group deliberation and decision making take place that must be open to the public."
493 So.2d at 1368-69 (quoting Webster's Third New InternationalDictionary of the English Language (Unabridged) (1971); emphasis added).See also Hargett v. Franklin County Bd. of Educ., 374 So.2d 1352 (Ala. 1979), and Board of Educ. of Marshall County v. Baugh, 240 Ala. 391,199 So. 822 (1941).
 VII. Limitation period for violations of the Sunshine Law
Auburn University and the trustees argue that, because § 13A-14-2(b) makes a violation of the Sunshine Law a misdemeanor, some of the claims in the action filed by the newspapers are barred by the 12-month limitation period of § 15-3-2, Ala. Code 1975, which requires a misdemeanor charge to be filed "within 12 months after the commission of the offense."
The newspapers argue that either § 6-2-33(3), Ala. Code 1975, which provides a ten-year limitation period for actions for malfeasance or misfeasance in office or § 6-2-38(l), Ala. Code 1975, which provides a two-year limitation period for "actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in" any other subsection of this Code section.
Section 6-2-33 provides, in pertinent part:
"The following actions must be commenced within 10 years:
". . . .
 "(3) Motions and other actions brought by or on behalf of the State of Alabama, a county, a municipality, or another political subdivision of the state against sheriffs, coroners, constables *Page 301 
and other public officers for nonfeasance, misfeasance, or malfeasance in office."
Section 6-2-38(l) provides:
 "(l) All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."
Because the action filed by the newspapers is a civil action and not a criminal action, the 12-month limitation period of § 15-3-2 for filing misdemeanor charges does not apply. Similarly, because §6-2-33(3) provides a ten-year limitation period for "actions brought by or on behalf of the State of Alabama, a county, a municipality, or another political subdivision," and because the newspapers did not bring their action on behalf of the State of Alabama, § 6-2-33(3) is inapplicable.
Because the Code does not specify a limitation period for a civil action to enjoin a violation of the Sunshine Law in particular, the residuary catchall § 6-2-38(l) governs such an action. Because the newspapers filed their action on February 28, 2001, within two years of the first alleged violation of the Sunshine Law on April 9, 1999, no claim within the action is barred.
 VIII. Applicability of the Sunshine Law to meetings of fewer than a quorum
We next address whether the Sunshine Law applies to a meeting of fewer than a quorum.
 "'The attendance of a quorum is a condition precedent to everything. Until then there is an absolute incapacity to consider or act in any way upon any matter. When the body is so legally convened and constituted, it has power to consider what is within its jurisdiction and authority, and to declare the existence of facts other than the fact of its own existence. Until it comes into existence, it cannot proceed, nor make any record of its proceedings. It has no authority to make a record showing anything. Less than a quorum are without power to act or bind anybody in any manner. Their action, being absolutely void, may be ignored or attacked in any proceeding. The record of a legally constituted tribunal is aided and upheld by a presumption in favor of regularity. Surely, there can be no presumption in favor of a record made by persons who have no shadow of authority to act.'"
Penton v. Brown-Crummer Inv. Co., 222 Ala. 155, 160, 131 So. 14, 18
(1930) (quoting City of Benwood v. Wheeling Ry., 53 W. Va. 465, 476,44 S.E. 271, 276 (1903); emphasis added). Accord Ex parte Atkinson,493 So.2d 991, 992 (Ala. 1986) ("In order to conduct business, a quorum of the Board must be present.").
Thus, the Board can legally act to set policy regarding Auburn University only with the presence of a quorum of trustees. Amendment 670, Penton, supra, Wallis, supra, and Ex parte Atkinson, supra. Accordingly, fewer than a quorum of the Board meeting together do not constitute the Board acting as "as a deliberative body to set policy regarding" Auburn University. Wallis, 493 So.2d at 1369. Thus, the Sunshine Law does not apply to a meeting of fewer trustees than a quorum.[1] See Amendment 670, Penton, supra, and Ex parte Atkinson,supra. Accord Graham County Elec. Coop., Inc. v. Town of Safford,95 Ariz. 174, 388 P.2d 169 (1963); Adler v. City Council of Culver City, *Page 302 184 Cal.App.2d 763, 7 Cal.Rptr. 805 (1960); Turk v. Richard, 47 So.2d 543
(Fla. 1950); Daily Gazette Co. v. North Colonie Bd. of Educ.,412 N.Y.S.2d 494, 67 A.D.2d 803 (N.Y.Sup.Ct. 1979); Orange County Publ'nsv. Council of Newburgh, 401 N.Y.S.2d 84, 60 A.D.2d 409 (N.Y.Sup.Ct. 1978); State ex rel. Newspapers, Inc. v. Showers, 135 Wis.2d 77,398 N.W.2d 154 (1987). See Waters v. City of Birmingham, 282 Ala. 104,209 So.2d 388 (1968).
Although the various standing committees of the Board met to consider proposals and to make recommendations, the standing committees, with the exceptions of the Property and Facilities Committee and the Athletic Committee, could not and did not take any action on behalf of the Board. Thus, but for the two exceptions, none of the standing committees met "as a deliberative body to set policy regarding the public matters with which the [Board] is entrusted" Wallis, 493 So.2d at 1369. Moreover, because fewer than a quorum of the Board, eight trustees, cannot legally conduct the business of the Board, any meeting of one of the non-exceptional standing committees attended by fewer than eight trustees is not a meeting or session of a "group of individuals who sit as a deliberative body to set policy regarding the public matters with which the [Board] is entrusted," id., and is not, therefore, a meeting or session within the meaning of the Sunshine Law. See Amendment 670, Penton, supra, and Exparte Atkinson, supra. Accord Graham County Elec. Coop., Adler, Turk,Daily Gazette Co., Orange County Publications, and State ex rel.Newspapers, Inc., supra. Similarly, an ad hoc meeting of trustees attended by fewer trustees than a quorum is not a meeting or session of the Board within the meaning of the Sunshine Law. See Amendment 670,Penton, supra, and Ex parte Atkinson, supra. Accord Graham County Elec.Coop., Adler, Turk, Daily Gazette Co., Orange County Publications, andState ex rel. Newspapers, Inc., supra.
The newspapers did not challenge the action of the Board delegating its authority to act on behalf of Auburn University to the two exceptional standing committees — the Property and Facilities Committee and the Athletic Committee. Therefore, we do not address the validity of that action of the Board.
However, we infer from the record that a quorum of the Property and Facilities Committee or of the Athletic Committee is fewer than a quorum of the Board. Yet the Board has empowered these two exceptional standing committees to act on behalf of Auburn University. Therefore, so long as either of these two exceptional standing committees purports to act on behalf of Auburn University in any matter, any meeting of a quorum of such exceptional standing committee is subject to the Sunshine Law, within the parameters of this opinion.
 IX. Executive sessions — honorary degrees and names of buildings
Next, we address whether the Board violated the Sunshine Law when a quorum met "in executive session to discuss whether to name a building or award an honorary degree to a person, and [to] review the person's `personal traits.'"
 "We believe that the legislature intended by the use of the words `character' or `good name' to permit executive sessions whenever there is a discussion of one's general reputation, i.e., the estimate the public places on a person, his reputation, good or bad, and the personal attributes of an individual. It might also include such personal traits as honesty, loyalty, integrity, reliability, and *Page 303 
other such characteristics, good or bad, which make up one's individual personality. A discussion of any person relating to any such matters may therefore, under [§ 13A-14-2], be permitted at an executive session.
". . . .
 ". . . [T]he purpose of permitting the exception in question to our `sunshine laws' is to permit the board, commission, council, etc., to have free and wide-ranging investigation and discussion as to the `character or good name' of prospective appointees, personnel already employed, and the like; and, to protect the `character or good name' of such persons during such discussions."
Miglionico v. Birmingham News Co., 378 So.2d 677, 681-82 (Ala. 1979) (footnote omitted). "If a closed session is held, nothing other than the individual's good name or character may be discussed." Dale v. BirminghamNews Co., 452 So.2d 1321, 1322 (Ala. 1984) (emphasis added).
Unlike the city council in Miglionico, supra, and the school board inDale, supra, the Board does not interview an individual it considers for an honorary degree or a building naming in executive session. In determining whether to award an honorary degree or a building name, the Board must determine whether that individual deserves such an honor and whether the individual, once honored, might embarrass Auburn University. Inquiry by the Board into the worthiness of an individual or the potential for embarrassment necessarily invites or even requires debate among the trustees about the individual's "general reputation, i.e., the estimate the public places on a person, his [or her] reputation, good or bad, and [his or her] personal attributes," or the individual's "personal traits [such] as honesty, loyalty, integrity, reliability, and other such characteristics, good or bad, which make up one's individual personality." Miglionico, 378 So.2d at 681. Executive or closed sessions for this purpose allow candid and robust debate to promote and to protect the legitimate interests of Auburn University without publicizing any character or reputation defect in the individual. Accordingly, we conclude that the Board meeting in executive session to discuss awarding an honorary degree or a building name is within the "character and good name" exception of Miglionico, supra. Thus, this policy of the Board does not violate the Sunshine Law.
 X. Attorney-client privilege
Last, we address whether the permanent injunction entered by the trial court impermissibly or unconstitutionally limits the right of the Board to confidential communications with its attorney or the right of the Board to legal advice from its attorney. Auburn University and the trustees contend that the attorney-client privilege exception to the Sunshine Law established in Dunn v. Alabama State University Board ofTrustees, 628 So.2d 519 (Ala. 1993), overruled on other grounds, Watkinsv. Board of Trustees of Alabama State University, 703 So.2d 335, 341
(Ala. 1997), includes meetings to discuss litigation imminently threatened but not yet filed or pending and includes meetings to obtain legal advice about a proposed specific act and the potential legal consequences of that act. Auburn University and the trustees contend that this Court should again follow the Tennessee appellate decisions, which have held that the attorney-client exception to the Tennessee Opening Meetings Act extends to such meetings, Van Hooser v. Warren County Bd. ofEduc., 807 S.W.2d 230 (Tenn. 1991), and Baltrip v. Norris, 23 S.W.3d 336
(Tenn.Ct.App. 2000).
In Dunn, we held: *Page 304 
 "The privilege of confidentiality represents one of the cornerstones of the attorney-client relationship. . . .
". . . .
 "Matters bearing as directly on the attorney-client relationship as the privilege of confidentiality does are inherently subject to judicial oversight and control.
". . . .
 "This `inherent, continuing, and plenary' control cannot, consistent with the Alabama Constitution, be abridged by legislative action. See Ala. Const. 1901, § 43: `In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them . . . to the end that it may be a government of laws and not of men.' . . .
 "Although we must reject the defendants' proposed rule, we also recognize the potential for abuse of the privilege that a broad application of the exception would invite. As the Supreme Court of Tennessee pointed out: `A public body could meet with its attorney for the ostensible purpose of discussing pending litigation and instead conduct public business in violation of the Act.' Smith County Education Ass'n [v. Anderson], 676 S.W.2d [328, 335 (Tenn. 1984)]. To prevent such abuse, that court set forth the following restrictions on the scope of the exception to Tennessee's `Open Meetings Act':
 "'The exception is limited to meetings in which discussion of present and pending litigation takes place. Clients may provide counsel with facts and information regarding the lawsuit and counsel may advise them about the legal ramifications of those facts and the information given to him. However, once any discussion, whatsoever, begins among the members of the public body regarding what action to take based upon advice from counsel, whether it be settlement or otherwise, such discussion shall be open to the public and failure to do so shall constitute a clear violation of the Open Meetings Act.
"'. . . .
 "'In summary, we hold that discussions between a public body and its attorney concerning pending litigation are not subject to the Open Meetings Act. We emphasize that this is a narrow exception and applies only to those situations in which the public body is a named party in the lawsuit.'
 "Id. at 334-35 (emphasis added [in Dunn]). We agree with this standard and adopt it as the rule in Alabama."
628 So.2d at 528-30.
In Van Hooser, supra, the Tennessee Supreme Court held that a school board
 "had a right to meet with its attorney to discuss [a] pending controversy [not yet before the courts] pertaining to [a teacher]. However, to the extent that the board made decisions or deliberated toward a decision, this was a `meeting' to which the Open Meetings Act applies. T.C.A. § 8-44-102(c)."
807 S.W.2d at 237. In Baltrip, supra, the Court of Appeals of Tennessee stated:
 "We must now determine whether the Board violated the [Open Meetings] Act by the mere fact that it met with [its attorney] in private. The Act provides that it is `the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret.' T.C.A. § 8-44-101(a) (1993). In Smith County Educ. Ass'n v. Anderson, 676 S.W.2d 328, 335 (Tenn. 1984), the Supreme Court held that the *Page 305 
Act did not apply to discussion between a school board and its attorney concerning pending litigation. The Court noted that this is a `narrow exception' and would apply `only to those situations in which the public body is a named party in the lawsuit.' Id. Further, the Court warned that
 "'once any discussion, whatsoever, begins among the members of the public body regarding what action to take based upon advice from counsel, whether it be settlement or otherwise, such discussion shall be open to the public and failure to do so shall constitute a clear violation of the Open Meetings Act.'
"Id. at 334.
 "The Supreme Court further defined this `narrow exception' in Van Hooser v. Warren County Bd. of Educ., 807 S.W.2d 230 (Tenn. 1991). In that case, the school board retired during a meeting to discuss with its attorney the status of a teacher who was accused of paddling students. Id. at 233. The teacher argued that the Act was violated because no charges had been filed against her nor was any litigation pending when the meeting occurred. Id. at 237. The Court disagreed, finding that the Act is not violated by a closed meeting when there is `a pending controversy that [is] likely to result in litigation between the school district and [the teacher].' Id. However, the Court found that in this closed meeting the board members had discussed and assented to the proposed conditions by which the teacher would return to work. Id. Because the board had `made decisions or deliberated toward a decision' during the closed meeting, the Court found that the board had violated the Act. Id.
 "We hold that the Board did not violate the Act in this case when it met with its attorney. When the Board met with its counsel, there was a `pending controversy that was likely to result in litigation,' i.e., a charge of unprofessional conduct had been lodged, and was then pending, against Baltrip. The depositions of the Board members show that during the meeting with [the attorney for the Board], she advised them of three options in regard to Baltrip: (1) termination; (2) reinstatement; or (3) reinstatement with conditions. Every member of the Board testified by deposition that the meeting was limited to a discussion with [the attorney for the Board] about the Board's possible legal options and that no deliberation or decision-making occurred. Baltrip has produced no evidence to the contrary. Thus, we affirm the trial court's determination that the Act was not violated."
23 S.W.3d at 341-42 (emphasis added).
We agree with the Tennessee appellate decisions. The attorney-client privilege exception to the Alabama Sunshine Law includes a meeting between a board, body, or commission and its attorney to discuss the legal ramifications of, and legal options for, not only pending litigation but also controversies not yet being litigated but imminently likely to be litigated, or imminently likely to be litigated if the board pursues a proposed course; provided, however, that the discussion at the meeting may not include the deliberations among the members of the board, body, or commission toward its decision on what option to choose or course to follow.
 XI. Conclusion
The summary judgment and the injunction are invalid to the extent that they are inconsistent with this opinion. We therefore reverse them to that extent, affirm them to the extent that they are consistent with this opinion, and remand this cause *Page 306 
for proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and HOUSTON, LYONS, and WOODALL, JJ., concur.
[1] Although the Board asks this Court to distinguish a "meeting" from a "session," under the Sunshine Law, § 13A-14-2 uses the terms interchangeably, and this Court rejected a similar argument in Dale v.Birmingham News Co., 452 So.2d 1321 (Ala. 1984).